May it please the court. First, patent exhaustion. Please allow me to state the core argument on patent exhaustion and then I will defer. There are allegations in this case by Ford that components of the F-150 truck infringe upon a hood and headlamp design patent. Since the F-150 truck that was sold under Ford's allegations embodies the subject design patents, the F-150 truck can be repaired under the repair doctrine without infringing the design deal. But let me distinguish Aiken and make two important points. First, under the repair doctrine, it is important to identify what the article of manufacture is. So you can see if the repair doctrine applies. Is the article being repaired? Is it being replaced? Is it being reconstructed? The Aiken case was a utility patent case and so in that case it was clear what the article of manufacture was. It was the needle and that is because it was a utility patent case and that is the way the utility patent statute works. Was the utility patent directed to the needle? Yes. Like here, the design patent is directed to particular parts? There is a distinction between how utility patent works, utility and design patent statute. Under section 101, which is the utility patent statute, the word therefore refers back to article of manufacture. So it is clear what the article of manufacture is. Why isn't it clear in these design patents that are at issue in this case what they are directed to and they are directed to specific parts? Under section 171A of the statute, it does not refer to article of manufacture. It refers to design for an article of manufacture. That allows portion claiming in design patents and it allows for potentially multiple articles of manufacture and components thereof that may embody the claim design. That point, the exact point, was made by the Supreme Court relatively recently in the Samsung versus Apple case when they said that the term article of manufacture was broad enough to include both the parent and a component. They said there was ambiguity and since there was ambiguity, they needed a separate test to determine what the article of manufacture was. Now they were doing that under section 289, the damages statute, and they remanded it to the lower courts. They came up with a four-part test that has not yet been reviewed by this court. But the important point is, under the design patent statute, you don't know what it is. So the question becomes, how should we handle the article of manufacture issue in the patent exhaustion repair context? We say that the test should be if the article sold embodies the claim design, then that article can be repaired without infringing the claim design. That's the test. In fact, that's the test that was already... But do you agree that that article can't be replaced? It just has to be repaired? Well, the article sold in this case is the F-150 truck. And so we're saying... Is the design patent on the entire truck or is it on separate components of the truck? That's the question. No. What does the patent actually patent? I mean, don't we look to see the language of the patent and see what the designs it is seeking to patent? You can gain some clues. In this case, both... I don't know why this is a difficult question. The patent says what designs and what particularly ornamental features it's patenting. Aren't those the subject of the patent? Not necessarily. I mean, the design patent has a certain claim to it in the drawings, and it has a title. In this case, the title is vehicle, vehicle headlamp and vehicle hood. So headlamp and hood. Yes, the title. But the title does not define the claim. And the title should not define the article of manufacture. In fact, in the government's brief... Doesn't what is shown define the claim in the patent? Generally, what is shown and described defines the claim, but that's separate from what is the article of manufacture. Because again, under design patent law... I think that going back to Judge Hughes' question, what does it matter if the entire design is not being repaired? It's being... I mean, it's not being repaired. It's being totally replaced. Again, the core issue here is, are we talking about replacement of a hood or headlamp, or are we talking about repair of a truck? And our argument is that under the design patent law, since it's a design for an article of manufacture, you should look at an article of manufacture that embodies the claim design. And clearly, the F-150 truck as a whole embodies the claim designs. But the headlamp also embodies the claim design. Yes, it also does. That's right. And also, by the way... If there is ambiguity, why is that a question for this court? I'm sorry? If there is ambiguity, why is that a question for this court? I mean, am I correct in understanding that there's attempts in Congress to clarify this, or do I understand that? There have been attempts at doing that, but we say it can be done as a matter of judicial interpretation and application of the patent exhaustion doctrine to design patents. I still don't understand why there isn't a distinction, even if we're looking at the whole truck, between repairing it and wholly replacing parts. Well, that gets into the repair doctrine. I would suggest... The repair doctrine doesn't allow you to put in a totally new part and infringe a patent, does it? Well, it depends on... In the design patent context, you're allowed to repair something by replacing a component. You're allowed to do that, as long as it's not a total reconstruction of the article of manufacture that you're talking about. And here, again, we say... Where's your support for that? I don't understand that. To me, it sounds like you're saying, as long as it's a design patent that's directed to the entire vehicle, you can replace whatever you want, short of replacing the entire vehicle. If the substantial embodiment... Or if the embodiment test is used, then the article of manufacture can be the F-150 truck. And if you're just replacing a hood or a headlamp, I would suggest you're just... You're repairing the truck. When you say, can be, that's where I get a little concerned, because what if it's both? Okay. If it's both, and it's ambiguous... What if it's both, though? The design patent could be for a design on the whole truck, or it could be the design on just a replacement part. And by the way, the design patent is not for the entire headlamp or hood. It's for components of those, and so they could be subcomponents. Sure. Because when you have this ambiguity, the repair doctrine is based on implied license, and that goes to the reasonable expectation of the parties. And so if you have ambiguity here on what it should be, then the one that you choose is the article sold. Here the headlamp... Both of the articles are sold, right? Both of the articles are sold. Yes, but the entire article sold, and the reasonable expectation of the purchaser of their F-150 is, this is my article that's The expectation of a purchaser of an F-150 that's been damaged, and they need a replacement part, would be to have the headlamp, right? It would be the replacement part, so it depends on the circumstances, right? Yes, but it depends on the article, again... But assume the headlight, the headlamp is the only thing that's damaged in a collision. Then you're... Again, under the patent exhaustion doctrine, if you use embodiment, and by the way, that is the test used by the district court when they were trying to determine associational standing. They cited quanta, method patents. This is the way that method patents work. You look at the entire article of manufacture. If that embodies the design patent, that can be repaired, and that is the test that we're urging upon the court. I see I only have five minutes left. If I may just go to the functionality argument. The key here, we're basing functionality on the reasoning and holding in the Besslock case. In that case, Besslock obtained a design patent only for a portion of the key, and not for the entire key lock combination. That was done in an effort to control the market for replacement keys, just like Ford is trying to control the market for repair parts here. This court's reasoning... But that's the consequence of getting a patent on something, is that if it's patented, other people can't make or manufacture or sell it, absence of license. Unless it's functional. In this case, the Besslock reasoning was based on a concept called complementary functionality. If you have two complementary articles, like the lock and the key, and you've only obtained a design patent on one, then the designs... Here's the key point. The designs are not analyzed for functionality when they're originally created, but rather when a replacement part is needed. In the Besslock case, the key had to look a certain way in order to restore the combination. Same complementary functionality also exists in this case. You're entering a rebuttal time. Do you want to say that? I'll just say that it's complementary functionality because you must return the F-150 truck back to its original appearance. Because complementary functionality does not depend on mechanical or utilitarian, it can also be based on aesthetic or ornamental. What about the fact that there's alternatives that somebody could purchase if they wanted to? If I recall correctly, Ford had some figures in their brief that showed that you could pick different designs if you wanted to spice it up, I guess. Alternative functionality, or the alternative... Like an alternative key. But the alternative hood and headlamp would not return the vehicle back to its original appearance. If you want to, if you need to return it back to its original appearance, you need the original look of the hood or the headlamp. Final point I want to make on patent exhaustion. The right to repair includes the right to use, and that protects the manufacturers and distributors of the repair parts, including New World. If the case law is we cite Kendall, but that also cites Standard Havens, Arrow, and Thompson Houston Electric Company back to 1897, I believe. The only requirement is that the part is being used for repair. Like in the have-made, you might need pre-approval, but in the repair context, in these cases, they say you don't need the pre-approval. And as long as the parts are being used for repair, then the manufacturer and distributor are protected under the repair doctrine. Thank you. Good morning, Your Honors, and may it please the Court, Jessica Ellsworth on behalf of Ford Global Technologies. I'd like to begin just briefly with my opposing counsel's suggestion that this case is similar to the Besslock case and the functionality analysis that the Court used in that case. And the answer is that that argument is plainly wrong. In the Besslock case, there was a particular design of a key blade, and only that design of a key blade would actually fit into the keyway and make the lock work. There is no clear and convincing evidence here that there is anything remotely similar. Judge Stoll, as you pointed out, there is an entire market of alternative parts that exist that are hoods and headlamps that will serve the same function as the hood and the headlamp on the F-150. They'll cover the engine. What about the response that you must return the vehicle back to its original state? So there's two responses to that. The first is that there is no evidence, certainly not clear and convincing evidence, that anyone is required to do that. People may choose to do that because they liked the way that it looked in the first place, and they purchased it, in fact, because they liked the way that it looked in the first place. But as the— What about the emphasis on insurance in their brief? Sure. There's a reference to insurance, and there was a witness who provided a couple insurance policies and said an insurance company will only pay for something that matches the same thing that was damaged. What a third party will pay for has never been held to be something that would impact the patent eligibility of a design. And secondly, the fact that an insurance company will provide a certain amount of money doesn't mean that the owner of the vehicle has to use that part. The owner of the vehicle is entitled to take that money and put on any part that they want to put on. So if they prefer a hood that has a different set of elevations and depressions, or they ABPA's own witnesses said looks sportier, they're certainly entitled to do that. And the insurance—what insurance will pay for has no impact on what is ultimately put on the vehicle. And I do think it's important to remember that it was the ABPA's burden to come forward with clear and convincing evidence because this was an affirmative defense that they were offering, and they lacked that evidence. You can see that in a number of their responses to requests for admission and in a significant amount of their witness testimony, which we have cited extensively in our brief, where they acknowledge that there are all sorts of ways in which other hood and headlamp designs can, in fact, function, and they disclaim the notion that they are arguing for any sort of utilitarian functionality. And really that puts them—I just want to make one more point on functionality, which is that in Ethicon Endo, what this court said is that consumer preferences are not enough to find something functional. That was a case about surgical instruments, and one of the things that this court said in reversing the district court's functionality finding was that the fact that doctors may prefer a certain arrangement of the buttons and the setup of that surgical instrument doesn't make it functional if, in fact, other designs serve the exact same useful purpose. And that is really, I think, puts an end to what the ABPA is arguing here. That brings us to their exhaustion argument, which they spent a lot of time discussing with you all today. The exhaustion argument that they're making flies in the face of case law dating back to the Aiken case involving the knitting machine and knitting needles. That decision in Aiken, which was subsequently approved by the Supreme Court in the Morgan Envelope case, says that the exhaustion does not extend to the right to repair an unpatented component, but you do have a problem where someone wants to replace a patented component, and that's what we have here. The headlamp and the hood are both each subject to a patent, and when someone wants to replace them or the ABPA's members want to manufacture knockoff replacements that they then make available for sale, that is the replacement of a patented component. Just to be clear, this is only about new replacement parts, right? It's not about used or salvaged parts that weren't already sold? Exhaustion would apply to those, would it? That's right, Your Honor. That's absolutely right. Once someone has driven off the lot with an F-150, they can take the hood off and do anything with it they want. They can take the headlamps out. If, in fact, they replace them with sportier performance parts, they can sell the ones that were on their original vehicle, absolutely. And that's not what this case is about. But from Aiken to Morgan Envelope to Aero involving the convertible tops to this Court's decision in the Helferich case, the question is whether or not the component being replaced is subject to a patent, and here it is. And you can also see this in the recent Bowman decision from the Supreme Court, where it specifically talked about exhaustion being the right to control an article, the loss of a right to control an article after an authorized first sale, but leaving untouched a patentee's ability to prevent a buyer from making new copies of a patented item. And that's what's at issue here. The ADPA's members want to make new copies of patented items and make them available for sale. That's not something that the exhaustion doctrine has ever allowed to happen. And in fact, in the Helferich decision, this Court went out of its way to stress that the Court should be very cautious about expanding the exhaustion doctrine into any new territory. Just to mention briefly, method patents, since my opposing counsel brought them up, the quandary about method patents comes from the fact that what's often at issue is an unpatented component. And when does the sale of an unpatented component trigger exhaustion? Here we're not talking about sales of unpatented components. And frankly, even if we were, the substantial embodiment test that the Supreme Court adopted to deal with that would be met here. These headlamps and hoods substantially embody the patented designs. You can see that just by looking at the patented designs themselves, which are in the joint appendix. So for all of these reasons, we ask that the Court affirm the district court's ruling below, which really was consistent with precedent in all ways, and that this Court reject the ADPA's argument. Thank you very much, Your Honors. Mr. Oake, you have a little less than two minutes left. Thank you, Your Honor. All of the patent exhaustion cases cited are not design patent cases. They're utility patent cases and some method patent cases. The issue is, how do we apply patent exhaustion to a design patent case when the statute says design for, and there are potentially multiple articles of manufacture? Unless, under the facts, there is a clear and distinct article of manufacture to be identified, like in Aiken. And here there is not, because multiple articles of manufacture embody this. The F-150 embodies it, the hood and the headlamp embody it, and the component parts embody it. So you have to identify what it is. If it's ambiguous like that, then the test should be whatever article of manufacture embodies that, a sale of that article will exhaust the patents. Now, if this Court wants to come up with a test for how patent exhaustion works, then that may raise some issues of fact here. This is on summary judgment and have to be remanded. But we say any article of manufacture that So, in closing, the design patents are invalid under the complementary functionality doctrine of BESLOC. That doctrine properly prevents design patents from controlling the market for repair and replacement parts. And that's really the key. When you have a repair replacement part issue, and that's what needs to be focused on. In BESLOC, this Court did not allow that control to happen. It shouldn't allow that control to happen here. And you can do it through ornamental functionality, if I may have another 10 seconds. If the patents are not invalid, then they are exhausted. Because the F-150 is an article of manufacture that embodies the claim designs and can be repaired under the repair doctrine. Again, that is the test that's already been used in this case by the District Court on the associational standing issue. Thank you very much.